UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORI A. MOELLER, | : | CIVIL NO.: 1:20-CV-00571 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, *Acting* | : | |
| *Commissioner of Social Security*,[1] | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**I. Introduction.**

　　This is a social security action brought under 42 U.S.C. § 405(g).  The

plaintiff, Lori A. Moeller ("Ms. Moeller"), seeks judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying her

claim for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is
automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d)
(providing that when a public officer sued in his or her official capacity ceases to
hold office while the action is pending, "[t]he officer's successor is automatically
substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance
with this subsection shall survive notwithstanding any change in the person
occupying the office of Commissioner of Social Security or any vacancy in such
office.").

the reasons set forth below, the Commissioner's decision will be vacated, and the case will be remanded to the Commissioner for further consideration.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 13-1 to 13-26.*[2]  On May 3, 2017, Ms. Moeller applied for SSI, alleging that she had been disabled since February 13, 2016. *See Admin. Tr.* at 110.  After the Commissioner denied Ms. Moeller's claim at the initial level of administrative review, Ms. Moeller requested an administrative hearing. *Id.* at 127, 157.  On November 5, 2018, Ms. Moeller, with the assistance of counsel, testified at a hearing before Administrative Law Judge Charles Dominick ("the ALJ"). *Id.* at 39-86.

The ALJ determined that Ms. Moeller was not disabled since May 3, 2017, the date she filed her application for SSI. *Id.* at 32.  And so, he denied Ms. Moeller benefits. *Id*. at 17.  Ms. Moeller appealed the ALJ's decision to the Appeals Council. *Id.* at 168.  Although Ms. Moeller submitted evidence to the Appeals Council that was not before the ALJ, the Appeals Council rejected that evidence on the basis that the evidence did not show a reasonable probability that it would

---

[2]  Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Ms. Moeller's claims.

2

change the outcome of the decision. *Id.* at 2.  The Appeals Council denied Ms.

Moeller's request for review on March 17, 2020. *Id.* at 1–6.  This makes the ALJ's

decision the final decision of the Commissioner subject to judicial review by this

court.

In April of 2020, Ms. Moeller began this action by filing a complaint

claiming that the Commissioner's decision is not supported by substantial evidence

and contains errors of law. *Doc. 1* at ¶5.  She requests that the court reverse the

Commissioner's decision and award benefits or, in the alternative, remand the case

to the Commissioner for a new hearing. *Id.* at §§ A, B.

After the Commissioner filed an answer and a certified transcript of the

administrative proceedings, *docs. 12-13*, the parties consented to proceed before a

magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the

undersigned, *doc. 15*.  The parties filed briefs, and this matter is ripe for decision.

*Docs. 16-18.*

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's

application for benefits, "the court has plenary review of all legal issues decided by

the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

3

But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Ms. Moeller was disabled, but whether substantial evidence supports the Commissioner's finding that she was not disabled and whether the Commissioner correctly applied the relevant law.

**B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate that he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[3]  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

Unlike with Disability Insurance Benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility

---

[3]  Here and elsewhere, "we cite to the edition of the Code of Federal Regulations in force at the time of the ALJ's decision in this case." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 n.1 (3d Cir. 2019).

for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017). SSI "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

The ALJ must assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)). In making this RFC assessment, the ALJ considers all relevant evidence in the record and all the

claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 416.945(a)(1), (a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision Denying Ms. Moeller's Claim.

On February 12, 2019, the ALJ denied Ms. Moeller's claim for benefits. *Admin. Tr.* at 17.  Before applying the sequential-evaluation process, the ALJ addressed Ms. Moeller's submission of exhibits that she presented at the hearing.[4] *Id.* at 20.  In his decision, the ALJ noted that he left the record open for thirty days after the hearing. *Id.*  Moreover, the ALJ concluded that the requirements of 20 C.F.R. § 416.1435(b) (relating to submitting evidence out of time) were met, and he admitted the evidence into the record. *Id.*  Because this complaint is premised on the ALJ's handling of Ms. Moeller's mental impairments and limitations, we will only discuss the issues that pertain to such.

At step one of the sequential-evaluation process, the ALJ found that Ms. Moeller had not engaged in substantial gainful activity since May 3, 2017, the date she applied for SSI. *Id.* at 22.

At step two of the sequential-evaluation process, the ALJ found that Ms. Moeller had the following severe impairments: chronic obstructive pulmonary disease; migraines; lumbar degenerative disc disease; degenerative joint disease of

---

[4] *See Admin. Tr.* at 20 (stating that 20 C.F.R. § 416.1435(a) requires claimants to "submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing" unless 20 C.F.R. § 416.1435(b) applies as an exception and allows the evidence to be admitted into the record).

the knees; tremors; post-traumatic stress disorder; agoraphobia; and depression. *Id.* at 22-23.

At step three of the sequential-evaluation process, the ALJ found that Ms. Moeller did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 24.  Pertaining to Ms. Moeller's mental limitations, the ALJ discussed Listings 12.04, 12.06, 12.15, and determined that Ms. Moeller did not meet the criteria of any of those listings. *Id.* at 25-26.  The ALJ found that Ms. Moeller has moderate limitations (1) "[i]n understanding, remembering, or applying information"; (2) "[i]n interacting with others"; (3) "[w]ith regard to concentrating, persisting, or maintaining pace"; and (4) in "adapting or managing oneself." *Id.* at 25.  Because Ms. Moeller only takes issue with the ALJ's handling of her limitations regarding concentrating, persisting, or maintaining pace, we will only delve into his determination to that extent.  In determining that Ms. Moeller had a moderate limitation in this regard, the ALJ noted that Ms. Moeller "takes psychotropic medications that cause drowsiness." *Id.*  He also observed: "She said she has a hard time focusing on conversations with her son.  She has night terrors every night that disrupt her sleep.  She fears leaving her house and suffers with anxiety and panic symptoms." *Id.* (citation to record omitted).

The ALJ assessed Ms. Moeller's RFC.  In making this RFC assessment, the ALJ considered Ms. Moeller's testimony alleging "disability due to multiple impairments, including post-traumatic stress disorder, anxiety, depression, night terrors, childhood trauma, [etc.]." *Id.* at 27.  Regarding Ms. Moeller's mental limitations, the ALJ noted that she asserted "difficulties with memory and concentration, difficulties getting along with others, and difficulties understanding and following directions." *Id.*  The ALJ further noted that "[s]he described a recent bout of depression when she was not able to get out of bed, eat or drink for 5 days." *Id.*  He also considered Ms. Moeller's testimony that her "depressive episodes occur every month and are caused by anxiety." *Id.*  The ALJ acknowledged that according to Ms. Moeller, her anxiety has increased since she was asked to testify against her brother in a murder case. *Id.*  He also noted that Ms. Moeller "takes medications such as Prozac, Trazadone and Klonopin that have side effects of tiredness, drowsiness and shakiness." *Id.*  The ALJ further considered Ms. Moeller's testimony that "she takes 750 mg of a muscle relaxer every day that 'knocks her out'" and that "she has pain everywhere, all the time and every day." *Id.*

The ALJ found that Ms. Moeller's medically determinable impairments reasonably could be expected to cause her alleged symptoms. *Id.*  But he found that Ms. Moeller's statements regarding the "intensity, persistence and limiting effects"

of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." *Id.*

In so finding, the ALJ reviewed the medical evidence regarding Ms. Moeller's mental impairments.  He noted that "the medical evidence of record established multiple diagnoses, including PTSD, severe and chronic, agoraphobia with panic attacks and major depressive disorder, recurrent severe." *Id.* at 29 (citation to record omitted).  But, the ALJ concluded that the clinical findings "do not establish greater mental functional limitations"[5] and Ms. Moeller's "mental status examinations are essentially normal." *Id.*  The ALJ provided:

> On June 22, 2017, Bahaman Sholevar, P.H.D., M.D. reported the mental status examination findings that she had good hygiene.  Her mood was euthymic and her affect was appropriate.  Her speech was normal.  She was fully oriented and her thought process was coherent.  Her attention and concentration was normal and her memory was intact.  She denied hallucinations, delusions and suicide risk.  Her mental status examination was within normal limits in June 2018.

*Id.* (citations to record omitted).

The ALJ noted that Ms. Moeller's "treatment has been limited to medication management and outpatient counseling." *Id.*  He noted that although her PTSD and depression "have been exacerbated recently with situational stressors of relationship issues," there "was improvement in October 2018." *Id.* (citations to

---

[5] Greater than what, he does not say.  We assume he means greater than the limitations he set forth in the RFC.

record omitted).  The ALJ acknowledged that Ms. Moeller "sleeps well and her night terrors have lessened significantly[,]" and he then concluded that Ms. Moeller's "baseline level of functioning is consistent with the ability to perform work within the parameters" he set forth in the RFC. *Id.* (citation to record omitted).  The ALJ also discussed Ms. Moeller's therapy visit on June 26, 2018 where she discussed her childhood trauma and the recurring anxiety that followed. *Id.*  He noted that Ms. Moeller fears retribution by her family, is being rejected by her family, and fears leaving her house. *Id.*  Moreover, he stated that her "mental status examination indicated a depressed and anxious mood[,]" although her "affect was constricted and appropriate" and "[h]er thought processes were normal." *Id.*  He also provided:

> [Ms. Moeller] had no hallucinations or delusions and no suicidal thoughts or homicidal thoughts.  Her short-term memory was intact and her long-term memory was impaired. She reports that she does not remember a lot of her [trauma] because she has "blocked it out". [sic]  Her concentration was intact and her intellect was above average.

*Id.* (citation to record omitted).

The ALJ then considered Ms. Moeller's daily activities in conjunction with her treatment records and determined that her claims of limited daily activities are not persuasive. *Id.*  He explained that her allegations were not persuasive because (1) the "limited activities cannot be objectively verified with any reasonable degree of certainty[,]" and (2) "even if the claimant's daily activities are truly as limited as

alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition in view of the relatively weak medical evidence." *Id.*  In attempt to explain this conclusion, the ALJ said, "[f]or instance, while she expressed a dislike of crowds, recent therapy notes indicate that she goes to festivals with her son and has been continuing to go out." *Id.* (citation to record omitted).

The ALJ also reviewed the opinion evidence in the record. *Id.* at 29-30.  In this regard, the ALJ asserted that he found the opinion of Dr. Murphy—the state agency consulting physiatrist who reviewed Ms. Moeller's medical records—persuasive because Dr. Murphy's opinion was consistent with the evidence. *Id.* at 30.  Dr. Murphy opined that Ms. Moeller "had mild difficulties understanding, remembering, or applying information; mild difficulties interacting with others[;] moderate difficulties concentrating, persisting or maintaining pace; and mild difficulties adapting or managing oneself." *Id.* (citation to record omitted).  Dr. Murphy also concluded that Ms. Moeller is "moderately limited in her ability to maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* (citation to record omitted).  Although the ALJ found Dr. Murphy's opinion persuasive, he concluded that Ms. Moeller is "slightly more

limited due to her testimony and psychotherapy records of her difficulties leaving her house and stressors with relationships and family members." *Id.*

The ALJ found that Ms. Moeller had the RFC to perform sedentary work[6] with the following relevant limitations: "is limited to simple routine tasks, but not at a production rate; is limited to occupations with only simple decision making and occasional changes in the work setting; and can have only occasional interaction with the public, coworkers, and supervisors." *Id.* at 26.

At step four of the sequential-evaluation process, the ALJ found that Ms. Moeller could not perform her past relevant work as a cashier, waitress, or resident-care aide. *Id.* at 30.

At step five of the sequential-evaluation process, considering Ms. Moeller's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were other jobs—such as document preparer and addresser—that exist in significant numbers in the national economy that Ms. Moeller could perform. *Id.* at 31.

---

[6] *See* 20 C.F.R. § 416.967(a) ("Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

In sum, the ALJ concluded that Ms. Moeller was not disabled since May 3, 2017, the date she applied for SSI benefits. *Id.* at 32.

## V. Discussion.

Ms. Moeller claims that the ALJ erred: (1) by failing "to properly account" for her "moderate limitations in concentration, persistence, and pace"; (2) by failing "to include any limitations in the ability to stay on task" after finding her "more limited than the opinion of [Dr. Murphy]"; and (3) by providing limitations in the RFC that are less restrictive than those found by the medical professionals. *Doc. 16* at 6.

The three issues raised by Ms. Moeller are separate but interconnected; they are all based on the ALJ's terse analysis regarding Ms. Moeller's moderate difficulties in concentration, persistence, or pace. Ms. Moeller contends that the overarching issue is the ALJ's failure to account for her inability to stay on task. *Id.* Because the ALJ did not provide a valid explanation for limiting Ms. Moeller to "simple tasks" after a finding that she, at the very least, has moderate difficulties concentrating, persisting, or maintaining pace, the ALJ has not met his burden of articulation. Lacking a clear explanation of the ALJ's reasoning, we cannot conclude that the ALJ's decision was supported by substantial evidence. The

ALJ's decision, therefore, will be vacated and Ms. Moeller's case remanded for further proceedings.

### A. Dr. Murphy's Assessment.

Dr. Murphy, the state-agency consulting psychologist, reviewed Ms. Moeller's records and completed a report of his assessment on August 31, 2017. *Admin. Tr.* at 124.  The relevant portion of the evaluation provides that Ms. Moeller has mild difficulties understanding, remembering, or applying information; mild difficulties interacting with others; moderate difficulties concentrating, persisting or maintaining pace; and mild difficulties adapting or managing oneself." *Id.* at 117.  Dr. Murphy also opined that Ms. Moeller is moderately limited in her ability to maintain concentration and attention for extended periods. *Id.* at 124.  Per Dr. Murphy's opinion, Ms. Moeller is moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.*

### B. The ALJ failed to adequately account for the extent of Ms. Moeller's limitations.

The ALJ failed to provide a valid explanation for his "simple tasks" limitation.  After reviewing the relevant testimony, medical records, and Dr.

Murphy's report, the ALJ limited Ms. Moeller to "simple routine tasks but not at a production rate pace." *Id.* at 26.[7]  Based on Ms. Moeller's testimony and her psychotherapy reports, the ALJ stated that he found Ms. Moeller "slightly more limited" than Dr. Murphy did. *Id.* at 30.  Despite limiting Ms. Moeller to simple routine tasks, the ALJ did not elaborate on why Ms. Moeller can perform such tasks even though the ALJ found her to be more limited than the opinion of Dr. Murphy. *Id.* at 30 (Dr. Murphy found Ms. Moeller to have moderate difficulties concentrating, persisting, or maintaining pace and that she is "moderately limited in her ability to maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.").

Both Ms. Moeller and the Commissioner rely on *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), to support their arguments.  Ms. Moeller contends that *Ramirez* requires the ALJ to do more than restrict a claimant to simple, routine tasks upon finding that the claimant has limitations in concentration, persistence, or pace. *Doc. 16* at 8-9.  The Commissioner argues that the issue in *Ramirez* differs

---

[7] "A limitation to 'simple tasks' is fundamentally the same as one 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making one simple work-related decisions[.]'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) (citations omitted).

from the issue at hand because Ms. Moeller was found to have *moderate* difficulty in concentration, persistence, or pace, while the plaintiff in *Ramirez* had difficulties that arose *often*. *Doc. 17* at 10.  While both assertions are true, neither provide a comprehensive statement of the precedent set in *Ramirez*.

The Third Circuit clarified that *Ramirez* does not stand for the proposition that ALJ's are forbidden from using "simple tasks" limitations when a claimant has moderate difficulties in concentration, persistence, or pace, but, the ALJ must explain *why* the claimant can perform such tasks. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019). [8]  "[S]o long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Id.*  Without such an explanation, a "simple tasks" limitation "does not warrant a conclusion about whether a claimant's difficulties in 'concentration, persistence, or pace' are so serious that he cannot satisfy the functional requirements of 'simple tasks'" since the limitation alone "does not account for the *extent* of a claimant's difficulties." *Id.* at 213 (emphasis in original).  Despite the plaintiff in *Ramirez* "often" having difficulties, and the plaintiff in *Hess* having "moderate" difficulties, the Third Circuit explained that regardless of the rating scale, a simple tasks limitation that

---

[8] Neither the Commissioner nor Ms. Moeller cites to *Hess* in their briefs, but because it is the most applicable precedent, we will rely on it to resolve this issue.

has a relationship to a claimant's difficulty in concentration, persistence, or pace

*must* be followed by a valid explanation. *Id.* at 212-13 ("[An explanation] must be

given whether difficulties in that area are said to arise 'often' or are called

'moderate' in severity.").  A valid explanation is necessary because of the close

relationship between a "simple tasks" limitation and concentration, persistence, or

pace:

> [S]uch limitations directly encompass and anticipate a minimal
> level of ability in that functional area.  "[U]nderstanding,
> carrying out, and remembering simple instructions" includes
> "[t]he ability to maintain concentration and attention for
> extended periods (the approximately 2-hour segments between
> arrival and first break, lunch, second break, and departure)[;]
> [t]he ability to perform activities within a schedule … [;] [t]he
> ability to sustain an ordinary routine without special
> supervision[;] … [and] [t]he ability to complete a normal
> workday and workweek without interruptions from
> psychologically based symptoms and to perform at a consistent
> pace and without an unreasonable number and length of rest
> periods."

*Id.* at 212-13 (citations omitted) (alterations in original).

Moreover, the ALJ need not use particular language or "explicitly include" a

"functional limitation finding as to 'concentration, persistence or pace' in the RFC

assessment." *Id.* at 213.  Although functional limitations and the RFC are different,

the functional limitations are "plainly relevant to an ALJ's statement of the

claimant's limitation at the later steps because they involve the claimant's actual

impairments." *Id.* at 209 (providing that functional limitation categories are "used

to rate the severity of mental impairments" when mental health is at issue, while

the "RFC is a determination of 'the most [a claimant] can still do despite [his] limitations' 'based on all the relevant evidence in [the] case record.'" (alterations in original) (citation omitted)). While "the functional limitation findings do not dictate the terms of the ALJ's statement of the claimant's limitation[,]" "those findings are relevant to that statement of the limitation." *Id.* at 210. A valid explanation is necessary to elucidate why the claimant's difficulties are not so significant to prevent him or her from performing simple tasks. *Id.* at 212. The Third Circuit has adopted a "fact-specific 'valid explanation' approach" and the outcome of each case depends on the particular facts. *Id.* at 213.

The ALJ in *Hess* "highlighted, among other things, the following: mental status examinations and reports that revealed that Hess could function effectively; opinion evidence showing that Hess could do simple work; and Hess's activities of daily living, which demonstrated that he is capable of engaging in a diverse array of 'simple tasks.'" *Id.* at 214. And the court in *Hess* concluded that the ALJ offered a "valid explanation for her 'simple tasks' limitation":

> [T]he ALJ explained at length and with sound reasoning why Hess's "moderate" difficulties in "concentration, persistence, or pace" were not so significant that Hess was incapable of performing "simple tasks." For example, coupled with her finding that Hess had "moderate difficulties" in "concentration, persistence or pace," the ALJ explained that Hess's "self-reported activities of daily living, such as doing laundry, taking care of his personal needs, shopping, working, and paying bill (when he has money), … are consistent with an individual who is able to perform simple, routine tasks." In the same

20

discussion, the ALJ also observed that "progress notes from treating and examining sources generally indicate no serious problems in this area of functioning, reporting that [Hess] could perform simple calculations, was fully oriented, and has intact remote/recent memory."

*Id.* at 213-14 (citations omitted).

The problem with the ALJ's decision here is not that he limited Ms. Moeller to "simple tasks."  The issue is the absence of a valid explanation for limiting Ms. Moeller to such work after crediting Dr. Murphy's opinion and finding that she had a moderate limitation in concentration, persistence, or pace.  He fails to elaborate on *why* Ms. Moeller can execute simple tasks despite her moderate difficulty in concentration, persistence, or pace.  Unlike the report in *Hess*, the ALJ's report denying Ms. Moeller benefits lacks examples of evidence that she is capable of performing simple tasks.  The ALJ does not link Ms. Moeller's daily activities to her ability to perform simple tasks.  Nor does he make a connection between Ms. Moeller's mental examinations and her capability of engaging in simple tasks.  Rather, the ALJ states that he considered "the record as a whole, including the objective diagnostic tests and clinical findings on . . . mental examinations, the claimant's longitudinal treatment history, and her documented activities of daily living," leading him to find that Ms. Moeller "is capable of performing a range of sedentary unskilled work within the above parameters." *Admin. Tr.* at 30.  Despite noting that Dr. Sholevar's mental status examination of Ms. Moeller indicated that her "attention and concentration was normal and her memory was intact," the ALJ

21

did not explain how this lead him to limit Ms. Moeller to simple tasks.  Without such an explanation, the ALJ does not sufficiently account for the extent of Ms. Moeller's difficulties, and thus, the limitations imposed are not supported by substantial evidence.

And we cannot say that the ALJ's error in this regard was harmless because it is unclear how the ALJ accounted for Dr. Murphy's opinion that Ms. Moeller  is moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 124.  And if the ALJ had included in his RFC that Ms. Moeller has difficulty staying on task, as suggested by Dr. Murphy's opinion, it could have made a difference as to whether Ms. Moeller can engage in sedentary work.  It also could have altered the vocational expert's analysis of the type of work Ms. Moeller can perform.

In sum, given the absence of a valid explanation regarding the "simple tasks" limitation that stemmed from Ms. Moeller's moderate difficulty in concentration, persistence, or pace, we cannot conclude that substantial evidence supports the ALJ's decision.  Accordingly, we will remand the case to the Commissioner for further proceedings.

### C.  Ms. Moeller's Other Claims of Error.

Because we conclude that the Commissioner's decision must be vacated and

the case remanded based on the ALJ's lack of a valid explanation regarding the

"simple tasks" limitation, we will not delve into Ms. Moeller's remaining claims of

error.  We note, however, that Ms. Moeller's three claims of error all stem from her

assertion that the ALJ did not provide any limitations on Ms. Moeller's inability to

stay on task.  This central issue should be addressed on the remand that follows.

"Plaintiff's additional claims of error may be remedied through the case's

treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7

(M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL

6729164, at *1 (M.D. Pa. Nov. 16, 2020).  "A remand may produce different

results on these claims, making discussion of them moot." *Id.*


## VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be vacated,

and the case will be remanded to the Commissioner for further consideration.  An

appropriate order follows.


*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge


23